IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BANK OF NEW YORK MELLON TRUST CO., N.A., AS TRUSTEE FOR MORTGAGE ASSETS MANAGEMENT SERIES I TRUST, PLAINTIFF, <br><br> V. <br><br> RUBY JEWELL DABNEY, DEFENDANT. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 3:18-CV-1606-B-BK |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this case has been referred to the undersigned United States magistrate judge for pretrial management.  Before the Court is Plaintiff Bank of New York Mellon Trust Company, N.A.'s *Motion for Summary Judgment*. Doc. 118.  For the reasons set forth below, the Motion should be **GRANTED**.

### I. BACKGROUND

Plaintiff Bank of New York Mellon Trust Company, N.A., as trustee for Mortgage Assets Management Series I Trust ("BNY")[1], sued Defendants Ruby Jewell Dabney ("Mrs. Dabney"), Shebrena Ann Dabney, and Willie Ray Dabney for, *inter alia*, a declaratory judgment authorizing foreclosure of its security interest on the residential real property and improvements

---

[1] CIT Bank, N.A., the original plaintiff in this matter, assigned the at-issue Deed of Trust to BNY.  Doc. 35 at 4; Doc. 120-1 at 28-29 (Pl.'s Ex. A-4).

located at 4249 Huckleberry Circle, Dallas, Texas 75216 (the "Property").[2] Doc. 80 (*Fourth Amended Complaint*); Doc. 119 at 15.

On or about February 26, 2003, Ruby Jewell Dabney and Willie Ray Dabney (collectively the "Borrowers and The Dabneys") executed an Adjustable-Rate Note (the "Note") in the original principal amount of $97,500.00 payable to Financial Freedom Senior Funding Corporation ("Financial Freedom") and bearing an initial interest rate of 2.8% per annum. Doc. 80 at 3-4; *see* Doc. 120-1 at 6-8 (Pl.'s Ex. A-1). The Borrowers executed an Adjustable-Rate Deed of Trust (the "Deed of Trust" or "Loan Agreement") the same day. Doc. 80 at 4; Doc. 120-1 at 10-19 (Pl.'s Ex. A-2). The Deed of Trust gave Financial Freedom a security interest in the Property.

In 2009, Financial Freedom assigned the Deed of Trust to Mortgage Electronic Registration Systems, Inc. as Nominee for Financial Freedom Acquisition, L.L.C. ("MERS"). Doc. 80 at 4; Doc. 120-1 at 22-23 (Pl.'s Ex. A-3). In 2015, MERS assigned the Deed of Trust to CIT Bank, N.A. (at the time known as OneWest Bank, N.A.). Doc. 80 at 4; Doc. 120-1 at 25-26 (Pl.'s Ex. A-4). Finally, in 2018, CIT Bank assigned the Deed of Trust to BNY. Doc. 80 at 4; Doc. 120-1 at 28-29 (Pl.'s Ex. A-4).

BNY alleges that beginning in 2017, Mrs. Dabney failed to pay taxes, hazard insurance premiums, and property charges as required by the Loan Agreement, and was thus in default. Doc. 80 at 5. Mrs. Dabney was sent a notice of default and given opportunity to cure, but she

---

[2] Earlier in this litigation, BNY dismissed or abandoned claims against Willie Ray Dabney, who is deceased, and subsequently, Willie Ray Dabney's "Unknown Heirs." Doc. 22. Shebrena Ann Dabney has also since been terminated from this action, Doc. 45, leaving Ruby Jewell Dabney as the only remaining defendant.

failed to do so.  Doc. 80 at 5.  Thereafter, she was given notice that her loan was being accelerated.  Doc. 80 at 5.  In 2018, this action was filed.

In May 2024, BNY filed its *Fourth Amended Complaint*, Doc. 80, naming as sole defendant Ruby Jewell Dabney.  Securing service of process on Mrs. Dabney resulted in quite the saga.  Ultimately, this was accomplished when, in November 2024, the Court authorized BNY to effect service of process on Mrs. Dabney by publication, and upon BNY's request, the Clerk issued a summons for substituted service on Mrs. Dabney. Doc. 93; Doc. 98.  BNY then served Mrs. Dabney via publication. Doc. 103.  After Mrs. Dabney failed to timely respond or otherwise defend against this action, BNY filed a motion to appoint an ad litem pursuant to Texas Rule of Civil Procedure 244, as made applicable by Federal Rule of Civil Procedure 4(e), Doc. 108, which the Court granted.  Doc. 109.  Subsequently, the ad litem filed the required answer on behalf of Mrs. Dabney, who was not found, denying all claims.

BNY now moves for summary judgment on its claims.  Docs. 118, 119, 120.  In addition to permission to foreclose, BNY seeks a declaration that it has a statutory probate lien against the Property and that it is authorized to enforce its statutory probate lien against Mrs. Dabney through foreclosure pursuant to the Loan Agreement and the Texas Property Code and Texas Constitution.  Doc. 119 at 11-2.  Mrs. Dabney has not responded to BNY's *Motion for Summary Judgment* and the time to do so has long expired.  *See* N.D. TEX. L. CIV. R. 7.1(e) (providing that "[a] response and brief to an opposed motion must be filed within 21 days from the date the motion is filed.").

## II. APPLICABLE LAW

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all factual controversies in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

A party moving for summary judgment has the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (citation omitted). Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Id.* at 587 (citation omitted).

The court may not grant summary judgment by default when, as here, the nonmovant fails to file a response in opposition to the motion but may accept as undisputed the movant's version of the facts and grant a motion for summary judgment when the movant has made a prima facie demonstration of its entitlement to summary judgment. *Eversley v. MBank Dallas,* 843 F.2d 172, 174 (5th Cir. 1988) (summary judgment proper when non-movant fails to respond if movant's submission establishes a prima facie entitlement to relief); *Wilmington Sav. Fund Soc'y, FSB as Tr. for Cascade Funding Mortg. Tr. 2018-RM1 v. Barr*, 774 F. Supp. 3d 786, 795 (N.D. Tex. 2024) (mortgage lender's summary judgment motion could not be granted solely because the plaintiff failed to respond).[3]

## III. ANALYSIS

### A. Foreclosure

Under the Texas Property Code, a party has standing to initiate a nonjudicial foreclosure sale if the party is a mortgagee. *See* TEX. PROP. CODE §§ 51.002, 51.0025. A mortgagee includes the grantee, beneficiary, owner, holder of a security instrument, such as a deed of trust, or "if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." *Id.* § 51.0001(4), (6).[4] As the last assignee of record of the

---

[3] In its *Notice of No Response*, Doc. 121, to the motion for summary judgment, BNY reports that Dabney "has failed to timely file a response to Plaintiff's Motion, and as such, the Court may consider it unopposed." Doc. 121 at 1. While the law proscribes that approach, the Court does consider the facts asserted by BNY as uncontroverted.

[4] A party without a recorded interest in a security instrument may still have standing to foreclose if the party is the holder or owner of a note secured by the instrument. *See EverBank, N.A. v. Seedergy Ventures, Inc.*, 499 S.W.3d 534, 538 (Tex. App.—Houston [14th Dist.] 2016, no pet.). This rule stems from the common law maxim—now codified in Texas—that "the mortgage follows the note." TEX. BUS. & COM. CODE § 9.203(g).

Deed of Trust, BNY qualifies as a "mortgagee" under Chapter 51 of the Texas Property Code. TEX. PROP. CODE § 51.0025; *see* Doc. 119 at 12; Doc. 120-1 at 28-29 (Pl.'s Ex. A-4).

Here, BNY seeks an order to enforce its lien through nonjudicial foreclosure, or in the alternative, judicial foreclosure. Doc. 80 at 7-8. Judicial foreclosure occurs when a party successfully sues for recovery of real property under a real-property lien. TEX. CIV. PRAC. & REM. CODE § 16.035(a). Nonjudicial foreclosure occurs when a party sells real property under a power of sale that was created by a mortgage or deed of trust. *Id.* at (b). In Texas, to foreclose under a security instrument with a power of sale, the lender is required to show that: (1) a debt exists; (2) the debt is secured by a lien created under Texas law; (3) the borrower is in default under the note and security instrument; and (4) the borrower has been properly served with notice of default and acceleration." *Barr,* 774 F. Supp. 3d at 796 (citation omitted); *Huston v. U.S. Bank N.A.*, 988 F. Supp. 2d 732, 740 (S.D. Tex. 2013), *aff'd*, 583 F. App'x. 306 (5th Cir. 2014).

BNY is entitled to enforce its lien through nonjudicial foreclosure. First, there is no dispute that a debt exists under the Note and Loan Agreement. *See* Doc. 119 at 15-16. Under the terms of the Loan Agreement, which BNY attaches to the instant motion, The Dabneys were required to repair, maintain, pay taxes and assessments on, and insure the Property. *See* Doc. 119 at 15; Doc. 120-1 at 10-20 (Pl.'s Ex. A-2). The Dabneys, however, failed or refused to pay in full all insurance taxes due on the Property. *See* Doc. 119 at 15-16. As a result, The Dabneys defaulted on the Loan Agreement. *See* Doc. 119 at 15-16.

Second, The Dabneys executed the Loan Agreement, which granted Freedom Financial, and its successors and assigns, a lien on the Property to secure the debt. *See* Doc. 119 at 6-7;

Doc. 120-1 at 10-20 (Pl.'s Ex. A-2).  Thus, the debt is secured by a lien created under Texas law.

Third, BNY has shown through the declaration of Carelene Reid, a representative of the loan's mortgage servicer, that The Dabneys are in default on the 2003 loan.  *See* Doc. 120-1 at 2-4 (Pl.'s Ex. A).  As evidenced by the payment history attached to Reid's declaration, the loan has been in default since March 24, 2017.  *See* Doc. 120-1 at 2-4 (Pl.'s Ex. A-9).

Fourth, the summary judgment evidence shows that Financial Freedom gave The Dabneys the requisite notice.  "Under Texas law, a lender may not foreclose on a debt without providing both a notice of intent to accelerate and a notice of acceleration."  *Colbert v. Wells Fargo Bank, N.A.*, 850 F. App'x 870, 875 (5th Cir. 2021) (citing *Ogden v. Gibraltar Sav. Ass'n*, 640 S.W.2d 232, 234 (Tex. 1982)).  "After the requisite notice of intent is provided, notice of acceleration may take the form of the filing of an expedited application for foreclosure."  *Alcala v. Deutsche Bank Nat'l Tr. for Long Beach Mortg. Loan Tr. 2006-5*, 684 F. App'x 436, 438 (5th Cir. 2017).

Moreover, The Dabneys were properly served with notice of default and acceleration.  Financial Freedom sent notice to The Dabneys on April 20, 2017, advising that the 2003 loan was in default.  *See* Doc. 120-1 at 54-66 (Pl.'s Ex. A-7).  The notice included the total due, stated what actions required to cure the default, and stated that in the event the default was not cured, Financial Freedom intended to accelerate.  *See* Doc. 120-1 at 54-66 (Pl.'s Ex. A-7).  On August 9, 2017, after the default was not cured, Financial Freedom notified The Dabneys that the maturity of the debt was now accelerated.  *See* Doc. 120-1 at 69-72 (Pl.'s Ex. A-8).  BNY also sent a payoff quote to Mrs. Dabney's attorneys in September 2025, stating how much was currently owed on the loan.  Doc. 120-1 at 74-78 (Pl.'s Ex. A-9).

*B. Declaratory Judgment*

BNY also asks the Court to declare that it has and may enforce a statutory probate lien against the property.  Under the relevant sections of the Texas Estates Code, a decedent's estate and its debts immediately pass to the decedent's heirs at law.  *See* TEX. EST. CODE §§ 101.001(b), 101.051(b)(1).  The holder of an unpaid claim against a decedent's estate may seek to enforce a statutory probate lien against the property in the hands of, among other individuals, the decedent's heirs. *U.S. Bank N.A. v. Micheaux*, No. 3:23-cv-2692, 2026 WL 692614, at *14 (N.D. Tex. Feb. 12, 2026) (Horan, J.), *adopted by* 2026 WL 691582 (N.D. Tex. Mar. 10, 2026).

As outlined *supra*, BNY has shown that there was a debt, secured by a lien, on the Property and that BNY is the owner of the Note and beneficiary of the Deed of Trust.  Doc. 120-1 at 7-8, 28-29, 74-78.  As such, BNY is entitled to declaratory judgment that it has and may enforce a statutory probate lien against the Property.  *See also Deutsche Bank Nat'l Tr. Co. v. Mandujano*, No. SA-23-cv-1098-JKP, 2026 WL 49604, at *8 (W.D. Tex. Jan. 5, 2026) (granting declaratory judgment that plaintiff had statutory probate lien where "summary judgment and procedural history of the case establish [defendant] is an heir[-]at-law of [decedent], the original mortgagee, . . . [defendant] received an interest in the Property upon [decedent's] death, . . . [and] defendant did not cure the default").

*C. Attorneys' Fees*

Additionally, BNY seeks recovery of its reasonable attorneys' fees incurred in enforcing the Note and foreclosing on the Property.  Doc. 119 at 16-18.  In diversity jurisdiction cases, state law governs the award of attorneys' fees.  *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).  Under Texas law, attorneys' fees may be recovered pursuant to mortgage

contracts.  *See Richardson v. Wells Fargo Bank, N.A.*, 740 F.3d 1035, 1040 (5th Cir. 2014) (observing that, in Texas, motions for attorneys' fees provided by mortgage contracts are permissible under FED. R. CIV. P. 54(d)(2)).

Here, the Deed of Trust and Note permit the recovery of "costs and expenses, including reasonable and customary attorney's fees, associated with enforcement of [the] Note" if The Dabneys default on the Note.  Doc. 120-1 at 8 (Pl.'s Ex. A-1).  *See* Doc. 120-1 at 16 (Pl.'s Ex. A-2) ("Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided [here], including, but not limited to, reasonable attorney's fees.").  Thus, BNY is entitled to an award of its reasonable attorneys' fees and costs incurred in pursuing its foreclosure claim under the Note and Deed of Trust.  *TFHSP, LLC Series 10147 v. U.S. Bank*, N.A., No. 3:14-cv-2589, 2016 WL 2856006, at *4 (N.D. Tex. Apr. 18, 2016) (Horan, J.).  Because the record is not sufficiently developed to permit the Court to determine the amount of such award, however, BNY should be ordered to file a separate application for attorneys' fees with supporting documentation establishing the amount of the reasonable attorneys' fees and costs incurred and to which it is entitled.

## IV. CONCLUSION

Plaintiff Bank of New York Mellon's *Motion for Summary Judgment*, Doc. 118, should be **GRANTED** to the extent stated here.

**SO RECOMMENDED** on June 10, 2026.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

9

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).